## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| **NORTEL NETWORKS, INC., et al.** | : | |
| | : | **Case No. 09-10138 (KG)** |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

| | | |
|---|---|---|
| In re: | : | **Chapter 15** |
| **NORTEL NETWORKS LTD., et a.** | : | |
| | : | **Case No. 09-10164 (KG)** |
| **Debtors** | : | **(Jointly Administered)** |
| | : | |

| | | |
|---|---|---|
| **NORTEL NETWORKS, INC. and** | : | **Adv. Pro. No. 10-53065 (KG)** |
| **NORTEL NETWORKS LIMITED, et al.,** | : | **(Consolidated)** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Re: D.I. 22 & 96 (Adv. Pro. No. 10-53065)** |
| | : | **D.I. 27 (Adv. Pro. No. 10-53066)** |
| **COMMUNICATIONS TEST** | : | |
| **DESIGN, INC.** | : | |
| **Defendant.** | : | |

### OPINION DENYING DEFENDANT'S MOTIONS TO DISMISS
### AMENDED COMPLAINTS & DENYING PLAINTIFFS'
### MOTION TO DISMISS COUNTERCLAIMS[1]

Defendant Communications Test Design, Inc. ("CTDI") has moved to dismiss the

Amended Complaints of Nortel Networks, Inc. ("NNI") and Nortel Networks Limited

("NNL" and, collectively with NNI, the "Nortel Plaintiffs" or the "Plaintiffs") under Fed.

R. Civ. P. 12(b)(6) or, if such relief is denied, to dismiss the counts alleging fraud pursuant

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

to Fed. R. Civ. P. 9(b).[2]  The Nortel Plaintiffs have moved to dismiss the counterclaims

asserted by CTDI in its Answers to the Amended Claims under Fed. R. Civ. P. 12(b)(6).

For the reasons set forth below, CTDI's Motions to Dismiss the Amended

Complaints and request to dismiss the counts alleging fraud are DENIED.  The Nortel

Plaintiffs' Motions to Dismiss Counterclaims are DENIED.  However, although not

dismissing CTDI's counterclaims, the Court will specify in its Order that the counterclaims

may not serve as a basis for affirmative recovery against Plaintiffs.

## JURISDICTION

The Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C.

§§ 157 and 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper

pursuant to 28 U.S.C. § 1409.

## BACKGROUND

### I.    Procedural History

NNI and affiliated entities filed for protection under Chapter 11 of the Bankruptcy

Code on January 14, 2009.  NNI initiated the present adversary proceeding on September

21, 2010, and filed an Amended Complaint (D.I. 20) on November 12, 2010.  On November

15, 2010, CTDI filed a Motion to Dismiss the Amended Complaint (D.I. 22), which is

presently before the Court.

Nortel Networks Corp. and affiliated entities, including NNL, filed petitions for

recognition of certain Canadian proceedings under Chapter 15 of the Bankruptcy Code.

---

[2]  Rules 12(b)(6) and 9(b) are made applicable to these proceedings through Fed. R.
Bankr. P. 7012 and Fed. R. Bankr. P. 7009, respectively.

This Court granted such recognition by Order entered February 27, 2009.  On September 21, 2010, NNL filed a complaint against CTDI, which it subsequently amended (D.I. 25). CTDI filed a Motion to Dismiss Amended Complaint (D.I. 27)(together with the Motion to Dismiss Amended Complaint of NNI, the "Motions").

On December 10, 2010, the Court consolidated the Nortel Plaintiffs' adversary proceedings.  While substantially identical, the complaints differ in that NNL's complaint includes additional causes of action related to intellectual property, as NNL holds the intellectual property rights for the various Nortel entities, including NNI.

CTDI filed its Answers to the Amended Complaints (D.I.'s 53 & 54) on January 3, 2011. The Answers assert counterclaims against Plaintiffs, which Plaintiffs move to dismiss (NNI D.I. 96).

Court heard argument on the Motions to Dismiss Amended Complaints on January 5, 2011.  The parties submitted post-hearing letter-briefs.  On March 1, 2011, the parties submitted that the Nortel Plaintiffs' Motion to Dismiss CTDI's Counterclaims was also ready for disposition.

## II.   Contractual History

Nortel contracted with CTDI for repair of, and related services for, certain Nortel products.  Various agreements between the parties granted CTDI access to propriety intellectual property, trade secrets, and technical information, and also permitted CTDI to purchase proprietary components from Nortel.

The following are the underlying agreements (collectively, the "Agreements") between the parties:

- Technical Information Agreement (1994):  CTDI to repair and update Nortel telsets.

- Asset Purchase Agreement (July 1999):  Sale of Nortel's Nashville, TN facility and on-site parts  to CTDI.

- Master Contract Repair Services Agreement (September 1999):  CTDI to repair Nortel products and to provide repair services to Nortel directly.

- Alliance Agreement (2006):  Established and defined business processes in support of joint marketing and provision of repair services to certain customers.

- Technical Information License Agreement (2006):  CTDI given limited license to use Nortel's "know-how."

- MCRSA Amended (September 2007):  CTDI to repair Nortel telsets for 3rd parties with royalty payments to Nortel.

## CTDI'S MOTIONS TO DISMISS THE NORTEL PLAINTIFFS' AMENDED COMPLAINTS

## I.    The Amended Complaints

The Nortel Plaintiffs allege that CTDI breached the Agreements by using Nortel's proprietary information and components to manufacture Nortel products "from scratch" and to refurbish or re-manufacture Nortel products and sell them to third parties.  Nortel further alleges that CTDI's fraudulent activities were willful and malicious.

### A.    Claims for Relief

In their Amended Complaints, the Nortel Plaintiffs assert the following causes of action:

- Misappropriation of Trade Secrets (NNI Count I; NNL Count I)
- Fraud (NNI Count II; NNL Count VII)
- Breach of Contract (NNI Count III; NNL Count V)

- Breach of the Implied Covenant of Good Faith and Fair Dealing (NNI Count IV; NNL Count VI)
- Unjust enrichment (NNI Count V; NNL Count VIII)

NNL pleads the following additional claims related to Nortel's intellectual property rights, which are held by NNL (collectively, the "Trademark Claims"):

- Trademark Infringement (NNL Count II)
- Dilution of Famous Mark (NNL Count III)
- False Designation of Origin (NNL Count IV)

### B.    Alleged Damages

The Nortel Plaintiffs state that the limited information they have regarding CTDI's allegedly fraudulent activities establishes resultant direct losses to Nortel of at least $44,000,000 in lost sales.  The Nortel Plaintiffs also allege that CTDI was unjustly enriched by greater than $30,000,000 from the sale of counterfeit goods to over 40 customers from 2005 through 2009, and that CTDI improperly sold millions of dollars of Nortel circuit packs without compensating Nortel.  The Nortel Plaintiffs assert that compensatory damages plus exemplary and punitive damages – to which Nortel is entitled if CTDI's activities are found to be willful and malicious – will be greater than $130,000,000.

## II.    CTDI's Motion to Dismiss Amended Complaint

On November 15, 2010, CTDI filed its Motions to Dismiss Amended Complaints. In its Motions, CTDI sets forth numerous grounds upon which the Amended Complaints, or portions thereof, should be dismissed.  The Court will examine each in turn.

## III.    Judicial Estoppel

In its Motions to Dismiss, CTDI argues that the Nortel Plaintiffs' claims against CTDI are barred under the doctrine of judicial estoppel.  CTDI asserts that the Nortel

Plaintiffs' current arguments are irreconcilably inconsistent with their previous claims in litigation with Atlanta Telephone Co. ("ATC") and in separate litigation with SWB of Nashville, Inc. ("SWB").

### A.    Background

According to Plaintiffs, in July 2008 one of ATC's customers communicated with them.  The customer had received 3,700 Nortel telsets from ATC that were advertised as new, but, according to the customer, clearly were not.  During resulting litigation, Nortel v. ATC (N.D. Ga.),[3] Nortel learned that ATC had acquired the telsets from SWB.  Through subsequent litigation against SWB (E.D. Tenn.),[4] Nortel learned that the counterfeit telsets that SWB passed on to ATC originally came from CTDI.  Nortel then exercised its right under the Master Contract Repair Services Agreement to conduct an audit of CTDI's records.  The audit allegedly showed that CTDI engaged in fraudulent activities in breach of its contracts with Nortel, and engaged in a cover-up of same.  Nortel asserts that it was not aware of CTDI's fraudulent activities prior to the SWB litigation, due to CTDI's willful concealment and repeated misrepresentations.

CTDI argues that in Nortel's prior litigations against ATC and SWB, it claimed that ATC and SWB were the sources of the counterfeit telsets, which is inconsistent with its current claims against CTDI.

Nortel counters that the earlier lawsuits did not allege that *only* ATC and SWB were guilty of improper conduct, nor did they allege that the conduct that formed the basis of

---

[3]  Reported by Nortel as settled.

[4]  Resolution and status unknown.

6

the ATC and SWB lawsuits was *the only* improper conduct that occurred.  Nortel argues

that it only learned of CTDI's improper conduct through the ATC and SWB litigations, and

that it should not be disadvantaged by CTDI's fraudulent concealment.

### B.    Legal Standard

Judicial estoppel is an equitable doctrine, imposed at the court's discretion.  *State of New Hampshire v. State of Maine*, 532 U.S. 742 (2001).  There are no inflexible prerequisites and no exhaustive formula that a court must apply.  But there are several factors that typically inform a court's decision whether to apply the doctrine of judicial estoppel:

- whether the party's later position is clearly inconsistent with its position in the prior court action;

- whether the earlier court was persuaded to accept the earlier position, such that a decision by a later court accepting an inconsistent position results in the perception that one of the courts was misled;

- whether the party seeking to assert the inconsistent positions would derive an unfair advantage therefrom.

See *Id.* (internal citations omitted).

The Third Circuit Court of Appeals has held that:

 [j]udicial estoppel may be imposed only if:
(1)    the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding;

2)    the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and

3)    the use of judicial estoppel is tailored to address the affront to the court's authority or integrity.

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001),

quoted by *Dam Things from Denmark, a/k/a Troll Company ApS v. Russ Berrie & Co.*, 290 F.3d

548, 559.

### C.     Analysis

The Court finds that application of the doctrine of judicial estoppel against the Nortel Plaintiffs' claims is not merited.  The Plaintiffs' position is not clearly or irreconcilably inconsistent with their positions in prior proceedings.  Nothing suggests that Nortel asserted in its suits against ATC and SWB that only ATC and SWB committed improper acts, or that the universe of improper acts was limited to those attributable to ATC, or SWB, or both.  "[T]he only significance here of the earlier suits involving ATC and SWB is that those suits [allegedly] provided the thread that ultimately led to Nortel's discovery that CTDI was [allegedly] improperly using Nortel's Know-how and components . . ."  NNI's Memorandum of Law in Opposition to Motion to Dismiss, p. 13.  The Nortel Plaintiffs' claims against CTDI in their Amended Complaints "go far beyond anything involving ATC and SWB."  *Id.*

Furthermore, neither of the prior litigations resulted in a substantive determination by a court.  The litigation against SWB was settled; the result of the litigation with ATC has not been provided, though it appears that there was no court judgment.   Therefore, there is no possibility that this Court will make a determination that is irreconcilable with another court's determination, and therefore there is no threat to the court's authority, integrity, or reputation.

## IV.    Fed. R. Civ. P.  12(b)(6)

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding through Federal Rule of Bankruptcy Procedure 7012,  provides for dismissal

of a complaint that fails to state a claim upon which relief can be granted.  In reviewing a motion to dismiss, federal courts "are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *see also In re Plassein Int'l Corp.*, 366 B.R. 318, 322 (Bankr. D. Del. 2007).

To meet the pleading requirements of Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face". *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim "may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.  The plaintiff must plead factual content sufficient to allow the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. __ (2009), 129 S.Ct. 1973, 1949 (2009).  "A complaint does not need detailed factual allegations; however . . . [t]he '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.'" *Xpoint Techs. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 352 (D. Del. 2010)(quoting *Twombly*, 550 U.S. at 545). "[I]f, in view of what is alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial, establish a case which would entitle them to . . . relief, the motion to dismiss should not [be] granted." *Twombly*, 550 U.S. at 563 n. 8 (internal citation omitted), quoted by *Phillips v. County of Allegheny*,  515 F.3d 224, 233 (3d Cir. 2008).  "Such a determination is a context-specific task requiring the court 'to draw on its judicial experience and common sense.'" *Xpoint Techs.*, 730 F. Supp. 2d at 352 (quoting *Ashcroft*, 129 S.Ct. at 1950).

The Court finds that the Nortel Plaintiffs' Amended Complaints meet the pleading requirements of Fed. R. Civ. P. 12(b)(6).  The Court will explicate below its finding as to each count alleged.

## V.    Causes of Action

### A.    Misappropriation of Trade Secrets

The Nortel Plaintiffs allege that CTDI misappropriated Nortel's  trade secrets by selling manufactured and  remanufactured products to third parties, and that such actions were in breach of the parties' agreements, which, Plaintiffs allege, limit CTDI's use of Nortel's trade secrets for authorized repair services only.  The Plaintiffs further aver that CTDI misappropriated its trade secrets by using Nortel's know-how and technology to perform work and testing on Nortel Circuit Packs, which it then sold to third parties without compensating Nortel.  NNI Amended Complaint ¶46.

CTDI asserts that Plaintiffs fail to state a claim for misappropriation as to the Nortel circuit packs because the mere sale of the packs does not constitute misappropriation.

In the Amended Complaints, however, the Nortel Plaintiffs allege that "[C]TDI improperly employed Nortel Know-how and technology to perform work and testing on Nortel Circuit Packs *and* sold Nortel Circuit Packs into the market, without compensating Nortel."  NNI Amended Complaint ¶ 46.  (emphasis added)  Because the Plaintiffs' allegations are not limited to the sale of circuit packs, CTDI's argument for dismissal fails.[5]

---

[5]  The Court makes no determination at this time whether the sale of circuit packs, on its own, constitutes misappropriation of Nortel's trade secrets, nor whether such sales actually  occurred.

**B.      Fraud**

The Nortel Plaintiffs set forth multiple allegations of fraud on CTDI's part:

• CTDI made knowingly false representations that it would use Nortel's intellectual property only for the authorized repair of Nortel products.

• CTDI fraudulently concealed its unauthorized use of proprietary Nortel components to manufacture and remanufacture products for sale to third parties, knowing that it was permitted to use the components for authorized repair activities only.

• CTDI fraudulently misled Nortel by providing royalty reports that concealed CTDI's use of Nortel's proprietary Know-how and components for the unauthorized manufacture and remanufacture of products for sale to third parties.

NNI Amended Complaint ¶¶ 51-55; NNL Amended Complaint ¶¶ 80-85.

Furthermore, Plaintiffs assert that CTDI knew that its representations were false and intended Nortel to rely on the misrepresentations, that Nortel actually relied on the misrepresentations, and that Nortel was harmed thereby.  *Id.*

CTDI argues that the fraud claim should be dismissed because (1) the claim is based exclusively on CTDI's alleged breach of contract, and (2) Plaintiffs fail to plead fraud with the "particularity" required by Rule 9(b).

**1.  The Fraud Claim Is Not Subsumed Under The Breach Of Contract Claim**

CTDI is correct that a fraud claim that mirrors a breach of contract claim will not ordinarily stand.  However, the Nortel Plaintiffs' claim for fraud reaches well beyond the scope of their claim for breach of contract: the Plaintiffs contend that CTDI's fraudulent acts are not merely breaches of contract; rather, "they formed a part of a fraudulent scheme that was in addition and collateral to the parties' contractual obligations.."  NNI Memorandum

11

of Law in Opposition to Dismiss at p. 25.

> The "gist of the action" doctrine bars claims for allegedly tortious conduct where the gist of the conduct alleged sounds in contract rather than tort. . . The doctrine precludes a tort claim which essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. An exception to the doctrine exists where the contract is collateral to primarily tortious conduct.

*Polymer Dynamics, Inc. v. Bayer Corp.*, 2000 WL 1146622 at *6 (E.D. Pa.)(internal citations omitted).

> In *Polymer*, as in the instant case:

> The factual bases underlying plaintiff's fraud and contract claims clearly overlap. Plaintiff, however, alleges that certain misrepresentations by defendant . . . induced plaintiff to reveal confidential commercial information to defendant. Moreover, it is not clear that all of the proprietary information was encompassed by [the parties' agreements]. The court cannot conclude beyond doubt from the pleadings that the contract is not collateral to any of plaintiff's fraud allegations.

*Id.* at *7.

The Court is satisfied that the Plaintiffs' claims for fraud and for breach of contract are not mirror images, and therefore dismissal is not warranted.

### 2. The Fraud Claim Complies With Fed. R. Civ. P. 9(b)'s Particularity Requirement

CTDI avers that the Nortel Plaintiffs' fraud claim must be dismissed under Fed. R. Civ. P. 9(b) because it "does not recite the specific content of the alleged misrepresentations, or when, where or to whom it was allegedly made." Motion to Dismiss p. 18. CTDI further alleges that the fraud claim fails under a Rule 9(b) analysis because "Nortel does not allege that CTDI made a representation of material fact, knew the representation to be false, or intended for Nortel to act on such representation." *Id.* p. 17.

Fed. R. Civ. P. 9(b) requires that the circumstances constituting alleged fraud be pled with particularity.  Allegations regarding a party's state of mind in the commission of fraud may be pled generally.[6]

"The purpose of [Fed. R. Civ. P. 9(b)'s requirement that fraud be pled with particularity] is to place the defendants on notice of the precise misconduct with which they are charged."  *Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC)*, 321 B.R. 128, 140 (Bankr. D. Del. 2005) (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).  "To state a claim for fraud . . . all the plaintiff need do is inform the defendant of the particular conduct which is alleged to have been fraudulent."  *Id.*  "[T]he requirement of particularity does not require an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated the alleged fraud and reasonably believes that a wrong has occurred.'"  *Southern Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp.2d 509, 517 (D. Del. 2010) (citing *Household Int'l, Inc. v. Westchester Fire Ins. Co.*, 286 F. Supp.2d 369, 373 (D. Del. 2003)).

To satisfy Fed. R. Civ. P. 9(b), a plaintiff must plead;

(1) a specific false representation [or omission] of material fact;
(2) knowledge by the person who made it of its falsity;
(3) ignorance of its falsity by the person to whom it was made;
(4) the intention that it should be acted upon; and
(5) that the plaintiff acted upon it to his damage.

*Brinkmeier v. BIC Corp.*, — F. Supp.2d — , 2010 WL 3360568 *5 (D. Del. Aug. 25, 2010)(citing

*In re Suprema Specialties, Inc. Securities Litigation*, 438, F.3d 256, 270 (3d Cir. 2006)).

---

[6]  Rule 9(b)  Fraud or Mistake; Conditions of Mind.  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

The Nortel Plaintiffs make, in part, the following allegations in their Amended Complaints:

- CTDI fraudulently obtained Nortel IP and components by representing that they would be used for authorized repair services and instead used them to manufacture and remanufacture telsets for sale directly to third parties, in violation of the agreements between CTDI and Nortel.

- CTDI concealed its unauthorized activities.

- CTDI knowingly filed false royalty reports.

- CTDI repeatedly entered into agreements with Nortel that CTDI knew it was violating and would continue to violate.

- CTDI expected Nortel to rely on its misrepresentations, which Nortel did.

- CTDI sold Nortel Circuit Packs into the market and did not pay royalties to Nortel.

- CTDI engaged in a pattern of willful and malicious fraudulent activities.

- Nortel suffered damages due to CTDI's fraudulent conduct.

These allegations meet the five requirements of Rule 9(b), outlined above. Further, the Court finds that the allegations set forth in the Amended Complaints put CTDI on notice of its alleged misconduct, fulfilling the purpose of Rule 9(b)'s particularity requirement.

CTDI also argues that the Nortel Plaintiffs' fraud claim does not satisfy the particularity requirement of Rule 9(b) because the Plaintiffs' do not provide the name of the specific person who allegedly made fraudulent statements.

Pursuant to Federal Rule of Civil Procedure 9(b), a heightened pleading standard applies to fraud claims, requiring that "in all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." The rule "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements." However, "the Third Circuit has warned that a court should not 'focus [ ] exclusively on [the] particularity language' as that 'is too narrow an approach and fails to take account of the general

simplicity and flexibility contemplated by the rules.' "

*American General Life Ins. v. Goldstein*, 741 F. Supp. 2d 604, 613 (D. Del. 2010).

> The purpose of Rule 9(b) is to provide defendants with notice of the precise nature of the claim against them, not to test the factual allegations of the claim. See *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). Although date, place, and time allegations may fulfill the requirement of pleading with particularity, these types of allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled sufficiently "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.*

*Southco, Inv. v. Penn Engineering & Mfg. Corp.*, — F. Supp. 2d —, 2011 WL 772906 (D. Del. 2011).

The Plaintiffs are not required under Rule 9(b) to plead which individual within a corporation allegedly made the fraudulent statement, as long as the pleadings are specific enough to place CTDI on notice of its alleged fraudulent activities. The Court finds that the Plaintiffs' pleadings do so. The Nortel Plaintiffs' fraud claims are based, in part, on the representations made by CTDI in repeatedly entering into formal agreements with Nortel while, allegedly, knowing that it intended to violate the express terms of the agreements. If the specific name of an individual within a corporation were required to meet Rule 9(b)'s particularly requirement – and the Court finds that it is not – this is provided through the signatories to the Agreements. For example, "Gerald J. Parsons" signed the Master Repair Services Agreement (1999) on behalf of CTDI as "President," and the Alliance Agreement (2006) and Technical Information License Agreement on behalf of CTDI as "Chairman & CEO." "Leo D. Parsons, President and COO" signed Amendment No. 14 to the Master Repair Services Agreement (2007) on behalf of CTDI.

The Plaintiffs' fraud claims do not wholly revolve around the Agreements. NNI and NNL additionally plead that CTDI engaged in a fraudulent scheme to conceal its improper activities. It is illogical to require a plaintiff to know the specific individuals involved in a successful concealment scheme. Requiring a wronged party to know the details of a concealment scheme at the motion to dismiss stage would largely inure successful concealment schemes from legal action.

### C.    Breach of Contract

The Nortel Plaintiffs allege that the Agreements between the parties limit CTDI's use of Nortel's intellectual property and components to certain repair activities, and that CTDI breached the Agreements through unauthorized use, including the manufacture and remanufacture of products, and sale of same to third parties.

CTDI asserts that the breach of contract claim should be dismissed because it fails to identify sufficiently the nature of the alleged breach. The Court disagrees. In ¶¶ 58 - 61 of NNI's Amended Complaint, and in similar provisions of NNL's Amended Complaint, the Nortel Plaintiffs set forth their claims for breach of contract. Relevant and specific factual allegations include:

> The contracts and licenses between CTDI and Nortel made clear that CTDI was granted access to Nortel's proprietary information and permitted to purchase Nortel's proprietary components only for its limited authorized Repair activities. Further, if CTDI performed any authorized Repair activities on Nortel products for a third party, CTDI was obligated to pay Nortel a royalty on the revenues gained from these activities.

NNI Amended Complaint, ¶ 2.

> CTDI unquestionably was <u>not</u> entitled to use its access to Nortel's
> proprietary information and components to manufacture Nortel products
> from scratch or to refurbish or remanufacture Nortel products and then sell
> them to third parties.  But that is exactly what CTDI did.
> (emphasis in the original)

NNI Amended Complaint, ¶ 3.

The Plaintiffs' Amended Complaints clearly assert that CTDI engaged in certain activities – including the manufacture and remanufacture of Nortel products, and sales to third parties – that allegedly breached the Agreements between the parties.  The Court is not determining that this is the case.  The Court finds that the allegations are sufficient to provide CTDI with the grounds upon which Nortel seeks relief, and therefore declines to dismiss the breach of contract claims.

### D.    Breach of Implied Covenant of Good Faith & Fair Dealing

The Nortel Plaintiffs allege generally that "CTDI breached the implied covenant of good faith and fair dealing by using Nortel's intellectual property, including, without limitation, the Nortel Know-how and proprietary technical information and components, for purposes not permitted by the agreements discussed above."  Specific allegations regarding how CTDI breached the implied covenant of good faith and fair dealing are contained in the section titled "Nortel and CTDI's Licenses and Contracts":

> In executing this amendment to the MCRSA [Master Contract Repair
> Services Agreement], CTDI affirmatively misrepresented and concealed its
> current and intended use of the licensed Know-how.  The amendment
> confirmed that "[CTDI] acknowledges that in its relationship as a service
> provider to Nortel, and in performing the Services under this Agreement, it
> will have access to Nortel intellectual property, including without limitation
> Product Information, which is owned by Nortel and which [CTDI] does not
> have a right to use for any purpose other than providing such Services,
> subject to the provisions of the [1994 TIA]." See MCRSA, Am. 14.  But in fact,

17

as Nortel discovered later and as detailed below, CTDI knew that its representations to Nortel were false. Before, during and after CTDI affirmed that it has no right to use Nortel's intellectual property and Product Information "for any purpose other than" providing authorized Repair services, CTDI in fact <u>was</u> using Nortel's intellectual property and Product Information for other, unauthorized purposes – the manufacture and sale of Nortel products to other parties. By falsely representing that it could not and would not use Nortel's proprietary technology for other purposes, CTDI was able to maintain its scheme of improperly using that technology.

NNI Amended Complaint ¶ 28.

In the 2006 TIA, CTDI acknowledged that the Know-how licensed to it for purposes of the Repair of Nortel's products was confidential, proprietary information that CTDI was required to keep confidential and to use only within the limited scope specified in the 2006 TIA. . . . Further, CTDI specifically acknowledged and agreed that the [sic] CTDI did <u>not</u> have the right to use the licensed Know-how and proprietary information for the remanufacture or refurbishment of Nortel products. . . .
In signing the 2006 Alliance Agreement and TIA, CTDI again affirmatively misrepresented its current and intended use of the licensed Know-how. CTDI concealed the fact that it was already making and selling telsets into the market and would continue doing so, despite its express acknowledgment that its agreements with Nortel did not permit this activity.

NNI Amended Complaint ¶¶ 31 - 31 (emphasis in original).

CTDI argues that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed because express contractual provisions control. *Volvo Constr. Equip, N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581 (4th Cir. 2004). While the Nortel Plaintiffs agree that express contractual provisions control, they argue that they should be able to retain the breach of the implied covenant of good faith and fair dealing claim as an alternative claim because of CTDI's contention that the contracts permitted it to take the actions it did. Without making any determination on the merits of the Plaintiffs' claim for breach of contract, the Court finds that dismissal of the claim for breach of the implied

covenant of good faith and fair dealing is unwarranted. The Nortel Plaintiffs have properly

pleaded and provided sufficiently detailed facts to support their claim.

### E.    Unjust Enrichment

The Nortel Plaintiffs allege that "CTDI's unauthorized use of Nortel's Know-how

and trade secrets has conferred benefits upon CTDI. CTDI has appreciated, accepted and

retained these benefits, under circumstances that would make it inequitable for CTDI to

retain these benefits without paying [Nortel] for their value." NNI Amended Complaint

¶ 66. Furthermore, "[w]hile [Plaintiffs have] to date been able to obtain only a limited

snapshot of CTDI's improper activities over a limited time frame, from 2005 - 2009, the data

collected so far establishes that CTDI's revenues from its improper and unlawful sales of

Nortel products totaled more than $30 million from sales to over 40 different customers."

NNI Amended Complaint ¶ 40.

CTDI argues that Plaintiffs fail to state a claim for unjust enrichment because express

contracts govern the rights and obligations of the parties. CTDI cites *Tolliver v. Christina

School Dist.*, 564 F.Supp. 2d 312, 315 (D.Del. 2008), which held that "a claim for unjust

enrichment will be dismissed if the complaint alleges an expressed enforceable contract

that controls the parties' relationship." The Nortel Plaintiffs argue that because its claim

of unjust enrichment is based on conduct outside the scope of the parties' Agreements, the

claim for unjust enrichment cannot be supplanted or precluded by the Agreements. *Tolliver*

also stands for the proposition that if the contract terms do not govern, the claim for unjust

enrichment may be viable. *Id.* The Court must make a factual determination as to what

CTDI actually did before it can address the legal issue of whether CTDI's conduct was

19

within or outside of the scope of the parties' Agreement.  Taking the facts asserted by the Nortel Plaintiffs as true, and viewing the facts in the light most favorable to Plaintiffs, as the Court is required to do on a motion to dismiss, it is reasonably and plausibly conceivable that Plaintiffs could prevail on their unjust enrichment claim and, therefore, dismissal of the claim must be denied.

### F.    Trademark Infringement; Dilution of Famous Mark; False Designation of Origin[7]

CTDI asserts that the Trademark Claims should be dismissed because they are nothing more than mis-labeled breach of contract claims and are wholly subsumed thereby. NNL counters that the existence of trademark-related contracts does not preclude action on the Trademark Claims apart from any breach of contract claims because the alleged trademark violations exceeded the scope of the Agreements and related licenses. *Brennan's Inc. v. Dickie Brennen & Co. Inc.*, 376 F.3d 356, 364, 367 (5th Cir. 2004).

Accepting NNL's factual allegations as true, the Court cannot find that CTDI did not commit trademark violations beyond the scope of the parties' Agreements.  This claim involves a legitimate factual dispute, and must, therefore, proceed to trial.  The Court denies CTDI's motion to dismiss the Trademark Claims.

## VII.    Statue of Limitations

CTDI argues that any claims based on conduct that occurred prior to January 14, 2006 are time-barred because a three year statute of limitations applies under Delaware law, which is calculated in reference to the petition date of January 14, 2009.  10 Del.C. §

---

[7] Causes of action for NNL only, as holder of Nortel's intellectual property rights.

8106. The Nortel Plaintiffs counter that any applicable statute of limitations is tolled under the fraudulent concealment doctrine. *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 186 (D.Del. 2000).

The Court cannot determine at this stage that CTDI did not engage in fraudulent concealment. Therefore, the Court will not dismiss Nortel's claims as time-barred.

## VIII.  Conclusion

For the reasons set forth above, Defendant CTDI's Motions to Dismiss the Amended Complaints are DENIED.

## THE NORTEL PLAINTIFFS' MOTION TO DISMISS CTDI'S COUNTERCLAIMS

## I.    CTDI's Counterclaims and the Nortel Plaintiffs' Motion to Dismiss

In its Answers to the Amended Complaints of NNI and NNL, CTDI raises the following counterclaims:

1)    <u>Breach of Contract</u>

- Nortel breached § 1.3 of the MCRSA by not purchasing all repair services for certain products specified in the MCRSA;

- Nortel breached § 1.3 of the MCRSA to update Exhibit 6, the list of products for which Nortel was required to purchase repair services from CTDI, to include new PEC codes for products that had undergone merely cosmetic or immaterial changes;

- Nortel breached § 1.6 of the MCRSA by failing to contribute appropriate resources to grow CTDI's repair business;

- Nortel breached § 1.6 by failing to consider and investigate potential opportunities for expanding the scope of the repair services provided by CTDI;

- Nortel breached § 1.2 of the Alliance Agreement by failing to work with CTDI to further the objectives of the parties' alliance and failing to develop and submit bids involving CTDI's services to third parties.

2)    Breach of Implied Covenant of Good Faith & Fair Dealing

- Nortel breached the implied covenant of good faith and fair dealing in connection with its failure to use its best efforts to grow CTDI's business.

CTDI seeks damages for its alleged losses resulting from Nortel's breaches, including, bot not limited to, lost profits and the amounts spent in reliance on Nortel's performance.

The Nortel Plaintiffs move for dismissal of the certain counterclaims that allege (1) a duty to add products to Exhibit 6 of the MCRSA, (2) a breach of § 1.6 of MCRSA, and (3) a breach of the Alliance Agreement, arguing that these counterclaims are defeated by the express terms of the relevant Agreements.[8]

## II.    Analysis

The Court incorporates its earlier discussion of the standards for a Motion to Dismiss. The Court finds that the Nortel Plaintiffs' Motion to Dismiss CTDI's Counterclaims fails to satisfy the applicable requirements. If resolution of the counterclaims solely involved contract interpretation, the Court would make a determination as a matter of law. However, resolution of the counterclaims requires factual findings that render dismissal at this stage inappropriate. Potential factual issues raised include: relevant industry standards re PEC codes; Nortel's contributions to growing CTDI's repair business; and Nortel's actions related to expanding the repair services that

---

[8] NNI filed the Motion to Dismiss Counterclaims, in which NNL joined.

CTDI provided to Nortel.

## III.    Setoff

In its Motion to Dismiss Counterclaims, NNI argues that CTDI's counterclaims were barred by the terms of this Court's August 4, 2009 Bar Date Order in NNI's main bankruptcy case.   In its Memorandum in Opposition to NNI's Motion to Dismiss Counterclaims, CTDI specifies that it is not seeking affirmative relief for its counterclaims, but rather seek to assert any judgment as a setoff, thereby removing the counterclaims from the purview of the Bar Date Order.   In response to CTDI's clarification of the relief it is seeking from NNI, NNI requests in its Reply Memorandum in Support of its Motion to Dismiss Counterclaims that any order specifically provide that CTDI cannot seek affirmative recovery for its counterclaims.   The requested language is consistent with the Court's ruling in its Memorandum Order issued on March 18, 2011, permitting the joinder of Nortel Networks Corporation (D.I. 156), but limiting any recovery to setoff.

## CONCLUSION

For the reasons above, the Court denies, in substantive part, the Nortel Plaintiffs' Motion to Dismiss CTDI's Counterclaims.   The Court grants the Plaintiffs' request that the order accompanying this Opinion provide that CTDI's counterclaims may not form the basis for CTDI's recovery of any affirmative relief from Plaintiffs.


Date: March 22 , 2011

Kevin Gross, U.S.B.J.